WO

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

James R.,

Plaintiff,

v.

Commissioner of Social Security Administration,

Defendant.

No. CV-25-03198-PHX-SHD

**ORDER**

Claimant James R. ("Claimant")[1] seeks review of the Social Security Administration Commissioner's ("SSA" or "Commissioner") final decision denying him disability insurance benefits under Title II of the Social Security Act. For the reasons set forth below, the Administrative Law Judge's ("ALJ") decision is **vacated and remanded** for further administrative proceedings.

## I. BACKGROUND

### A. Factual Overview

Claimant was 41 years old on the alleged disability onset date of March 31, 2020. (AR 30.) He has at least a high school education and has past relevant work as a merchandise deliverer, which is an unskilled job performed at the medium exertional level. (*Id.*) On November 10, 2020, Claimant filed an application under Title II of the Social Security Act for disability insurance benefits. (AR 17.) The claim was initially denied on

[1] As a matter of practice, Claimant is referred to as such and, at most, by his first name and last initial to protect his privacy.

April 19, 2022, and upon reconsideration on July 10, 2023. (*Id.*) A telephonic hearing was held on September 25, 2024. (*Id.*) The ALJ issued an unfavorable decision on November 15, 2024. (AR 32.) The Appeals Council denied Claimant's request for review on July 7, 2025. (AR 1–3.) Claimant then appealed to the district court. (Doc. 1.)

**B. The SSA's Five-Step Evaluation Process**

To qualify for Social Security Disability Insurance benefits, a claimant must show that he "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to "any medically determinable physical or mental impairment." *Id.* § 423(d)(1)(A). The impairment must be of such severity that the claimant cannot do his previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2)(A). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At Step One, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," i.e., doing "significant physical or mental activities"; and (2) "gainful," i.e., usually done "for pay or profit." *Id.* § 404.1572(a)–(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At Step Two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At Step Three, the ALJ determines whether each of the claimant's impairments "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404.

*Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to Step Four. *Id.* §§ 404.1520(a)(4)(iii), (e). The claimant's RFC is his ability to perform physical and mental work activities "despite [his] limitations," based on all relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1)–(2).

At Step Four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "[his] past relevant work." *Id.* §§ 404.1520(a)(4)(iv), (e). "Past relevant work" is work the claimant has "done within the past five years that was substantial gainful activity." *Id.* § 404.1560(b)(1). If the claimant has the RFC to perform his past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform his past relevant work, the ALJ will proceed to Step Five in the sequential evaluation process.

At Step Five, the last in the sequence, the ALJ considers whether the claimant "can make an adjustment to other work," considering his RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the opposite. *Id.*

**C. The ALJ's Application of the Factors**

Here, at Step One, the ALJ concluded that Claimant had not engaged in substantial gainful activity since March 31, 2020. (AR 19.) At Step Two, the ALJ determined that Claimant had severe impairments of epilepsy, bipolar disorder, depression, anxiety disorder, mild cognitive impairment, and conversion disorder. (*Id.*) At Step Three, the ALJ found Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404. (AR 20.) With respect to Claimant's mental impairments, the ALJ analyzed the four "paragraph B" criteria and found that Claimant had mild limitations in (1) understanding,

remembering or applying information, (2) interacting with others, and (4) adapting or managing oneself, and a moderate limitation in (3) concentrating, persisting or maintaining pace. (AR 20–21.) The ALJ then found that Claimant had the following RFC:

> [Claimant can] perform a full range of work at all exertional levels but with the following nonexertional limitations:
>
> - no climbing of ladders, ropes, or scaffolds;
> - occasional climbing of ramps and stairs;
> - must avoid concentrated exposure to hazards; and
> - capable of understanding, remembering, and carrying out simple routine tasks.

(AR 22.)

At Step Four, the ALJ found that Claimant could not perform his past relevant work as a merchandise deliverer. (AR 30.) At Step Five, based on the RFC formulation and the testimony of the vocational expert ("VE"), the ALJ found that Claimant could adjust to other work existing in significant numbers in the national economy, including cleaner, grocery bagger, and dishwasher. (AR 30–31.) Accordingly, the ALJ concluded that Claimant was not disabled as defined in the Social Security Act from March 31, 2020, to the date of the decision. (AR 31–32.)

## II. LEGAL STANDARD

District courts may not set aside a final denial of disability benefits unless the ALJ's decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). Courts must consider the record in its entirety, "weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)).

The ALJ—not a reviewing court—is responsible for resolving ambiguities,

resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [courts] must defer to the ALJ's conclusion."). Further, courts may only review the reasons the ALJ provides in the disability determination; they "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010. Finally, only those issues raised by the party challenging the decision are reviewed. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

## III. DISCUSSION

Claimant argues that the ALJ committed harmful error by rejecting the assessments from Claimant's treating primary care provider, Kristin Marth, NP, and his treating psychiatric mental health nurse practitioner, Barbara Horton, PMHNP, without providing sufficient explanation, including failing to explain the consideration of the supportability and consistency factors. (Doc. 10 at 1.) I address this argument as to each provider in turn.

### A. Standard for Evaluating Medical Opinions

Under the regulations governing applications filed on or after March 27, 2017, treating or examining physician opinions are no longer entitled to deference over other medical sources. *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022). Thus, an ALJ must evaluate every medical source—treating and non-treating—based on several factors, the "most important" of which are "supportability" and "consistency." *Id.* at 791 (citations omitted). "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence," and consistency "means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Id.* at 791–92 (citation modified).

An ALJ "must articulate how persuasive [he or she] finds all of the medical opinions from each doctor or other source and explain how [he or she] considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (citation modified). Under the current regulations, "the decision to discredit any medical opinion[] must simply be supported by substantial evidence." *Id.* at 787. Although the standard is deferential, the ALJ's explanation must nonetheless permit review; therefore, a conclusory finding is insufficient because "even if the ALJ had given facially legitimate reasons . . . , the complete lack of meaningful explanation gives this court nothing with which to assess its legitimacy." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006); *see also Lambert v. Saul*, 980 F.3d 1266, 1277–78 (9th Cir. 2020) (holding that "boilerplate statement[s]" were insufficient and that error is not harmless where reasoning does not permit meaningful review).

**B. NP Marth's Opinion**

NP Marth completed a Physical Medical Source Statement setting forth her opinions concerning Claimant's limitations. (AR 2246–49.) The ALJ described NP Marth's findings as follows:

> Kristin Marth . . . opined that the claimant has the following limitations: can sit, stand, and walk at least 6 hours in an 8-hour workday; requires a job that permits shifting positions at will from sitting, standing, and walking; must be able to walk every 30 minutes for 5 minutes at a time; can frequently lift and carry 10 pounds and occasionally 10 pounds; he will need unscheduled breaks during an 8-hour workday in addition to normal breaks; can frequently twist, stoop, crouch, and climb ladders and stairs; can frequently look down, turn head right or left, look up, and hold head in a static position; he will likely be absent from work more than 4 days per month; his symptoms will interfere with his attention and concentration constantly during the workday; and he is incapable of even low stress jobs.

(AR 26–27.) The ALJ rejected NP Marth's opinion as "unpersuasive because it is overly restrictive and unsupported by the record." (AR 27.) Claimant argues that the ALJ committed harmful error by rejecting NP Marth's opinion, arguing that he erred in evaluating both the supportability and consistency of the opinion. (Doc. 10 at 14–19.)

**1. Supportability**

In considering the supportability of NP Marth's opinion, the ALJ only restated some explanations provided in the opinion, without analyzing those explanations: "In terms of supportability, Ms. Marth referenced grand mal seizures, memory loss, cognitive changes, as well as side effects from medication including involuntary tics, dystonia, and drowsiness (30F)." (AR 27.) Claimant argues that "the ALJ did not evaluate the supportability of [her] assessment at all," and therefore erred. (Doc. 10 at 14–15.) The Commissioner, on the other hand, argues that the ALJ found NP Marth's opinion supported, and instead discounted her opinion on the basis of the consistency factor only. (Doc. 12 at 3.)

The Commissioner's argument is unpersuasive. The pertinent regulations make clear that an ALJ must evaluate the "objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion(s)" when considering the supportability factor. 20 C.F.R. § 404.1520c(c)(1). Here, the ALJ made no findings regarding—and failed to evaluate altogether—the explanations provided by NP Marth. He therefore erred.

**2. Consistency**

As to consistency, the ALJ stated that NP Marth's opinion was "inconsistent with the evidence of record," explaining that Claimant's history of seizures was characterized elsewhere in the record as "petit mal, persistent episodes of déjà vu, staring spells that last under 1 minute, and 'odd feelings,'" and that Claimant only had "two grand mal (convulsive seizures) since March 2020." (AR 27 (citing AR 422–561, 655–722, 735–992, 1025–1318, 1453–1535, 1569–1789, 2250–2546, 2549–69, 2585–2830).) The ALJ also noted that NP Marth's opinion was

> also inconsistent with mental status exams that observed attention and concentration within normal limits; no indication of hyperactivity; a euthymic affect and a fine/good mood; logical and goal-directed thinking; good comprehension; good short- and long-term memory; fair grooming; a cooperative attitude; good eye contact; normal speech; no hallucinations, delusions, or homicidal ideation; and adequate orientation to person, place, time, and situation . . ..

(AR 27 (citing AR 518–61, 723–966, 993–1021, 1319–1437, 1441–51, 1557–68, 1790–2239).)

Claimant argues that the ALJ's finding that NP Marth's opinion was inconsistent with his history of seizures was improper. He argues that the record as a whole demonstrates that his seizures, of whatever type, interrupted his ability to complete a normal workday and workweek,[2] (Doc. 10 at 15–16; Doc. 13 at 6), and that the record supports NP Marth's assessed limitations, which she based on his epilepsy and related vision changes, cognitive decline, memory loss, and seizure-related injuries, (Doc. 10 at 17–18 (citing AR 2246–49)). He further argues that the ALJ erred in relying on normal mental status examination findings when evaluating the consistency of NP Marth's opinion because the ALJ did not explain how those findings were inconsistent with NP Marth's assessment. (Doc. 10 at 18 (citing AR 27); Doc. 13 at 6 (citing AR 27).)

Claimant's arguments fail because, regardless of the characterization of his seizures as petit mal or grand mal,[3] the ALJ's decision that NP Marth's opinion was inconsistent with the medical record was supported by substantial evidence, based on Claimant's objective mental status examinations showing largely normal findings. As the Commissioner noted in his Response, and as the records cited by ALJ confirm, although NP Marth reported that Claimant had memory problems and concentration issues, objective testing showed that Claimant had normal memory, (Doc. 12 at 5 (citing AR 1445)), and psychometric testing showed that Claimant did not appear to have concentration or focus issues, did not require breaks, and exhibited no overt memory, attention, or concentration problems, (*id.* at 5–6 (citing AR 1445, 1447)). Claimant's secondary argument—that the

---

[2] Claimant sets out a timeline of seizure activity from March 2020 through July 2024 that includes emergency room visits, reports of seizures lasting five minutes or longer about every two weeks, an August 2023 hospitalization for status epilepticus with respiratory failure, an epilepsy diagnosis after inpatient monitoring, and reports of possible nightly seizures. (Doc. 10 at 16–17 (citing AR 435, 562, 969, 1314, 1739, 2422, 2587–91, 2608–14, 2745).)

[3] The Commissioner argues that there is a significant difference between petit mal and grand mal seizures, (Doc. 12 at 4 n.1), but because the ALJ properly found NP Marth's opinion inconsistent for another reason, I need not address the varying characterizations of Claimant's seizures.

ALJ erred by failing to explain how the normal mental status findings were inconsistent with NP Marth's findings—is also unpersuasive given that it is reasonable to conclude, as the ALJ did here, that normal examination findings are inconsistent with limitations in the same areas of functioning, and that Claimant did not identify any specific limitations NP Marth identified that were not implicated by the normal findings cited by the ALJ. (*See* Doc. 10 at 18.) Because substantial evidence supported the ALJ's consistency analysis, the ALJ did not err.

**C. NP Horton's Opinion**

Psychiatric Mental Health Nurse Practitioner Horton completed a Mental Medical Source Statement setting forth her opinions concerning Claimant's limitations. (AR 2240–45.) The ALJ described NP Horton's findings as follows:

> Barbara Horton, PMHNP, opined that the claimant has extreme limitations in his ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; adapt or manage oneself; remember work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; maintain attention for 2 hour segments; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; complete a normal workday or workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; deal with normal work stress; and be aware of normal hazards and take appropriate precautions (29F). Ms. Horton further opined that the claimant would be absent from work more than 4 days per month (*Id.*).

(AR 29.) As with NP Marth's opinion, the ALJ rejected NP Horton's opinion as "unpersuasive because it is overly restrictive and unsupported by the record." (AR 29.) And as with the ALJ's evaluation of NP Marth's opinion, Claimant argues that the ALJ committed harmful error by improperly evaluating both the supportability and consistency of NP Horton's opinion. (Doc. 10 at 19–22.)

**1. Supportability**

The ALJ did not analyze the supportability of NP Horton's opinion, only restating some explanations provided in the opinion without analyzing them. (AR 29.) This is the same approach the ALJ took with NP Marth, and I find that it is insufficient for the same reason. The ALJ erred in his failure to evaluate the supportability of NP Horton's opinion.

**2. Consistency**

The ALJ found NP Horton's opinion inconsistent with the medical record because the record showed that Claimant was stable on medications, his bipolar disorder was controlled with medications, and his mental status examinations reflected largely normal findings. (AR 29.)

Claimant challenges the ALJ's consistency analysis, arguing that treatment notes describing his bipolar disorder, depression, or anxiety as stable or controlled with medication are not, in fact, inconsistent with NP Horton's assessment, because the record does not show that medication gave him lasting relief. (Doc. 10 at 20; Doc. 13 at 8.) Rather, he argues, the psychiatric treatment records from 2022 through 2024 showed continuing symptoms—such as anxiety, depression, mood lability, racing thoughts, and impaired short-term memory—consistent with NP Horton's assessment, despite multiple medications and adjustments. (Doc. 10 at 21 (citing AR 1798–1803, 1932, 1944–47, 1975, 2060–62, 2086–88, 2114).) And like with NP Marth, Claimant argues that the ALJ did not explain how his normal mental status examination findings were inconsistent with NP Horton's assessed limitations. (Doc. 10 at 21 (citing AR 29).) Finally, he contends that the record contains evidence consistent with NP Horton's limitations. (*Id.*)

The ALJ's conclusion that NP Horton's opinion was inconsistent is supported by substantial evidence. The ALJ's reliance on NP Horton's own records demonstrating Claimant's stability on medication, (AR 29 (citing AR 2240 ("Pt is stable on meds"))), as well as other records supporting Claimant's stability, (AR 29 (citing AR 735–966, 1790–2239, 2770–2830)), was proper. *See Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with

medication are not disabling for the purpose of determining eligibility for . . . benefits."). And, contrary to Claimant's assertion, it is reasonable to conclude that normal examination findings are inconsistent with limitations in the same areas of functioning. Finally, Claimant's disagreement with the ALJ's findings on mixed evidence in the record cannot support relief here because the ALJ's consistency analysis was supported by substantial evidence and it is the ALJ's responsibility to resolve conflicts in the medical record, not mine. *See Andrews*, 53 F.3d at 1039.

**D. Remand for Harmful Error**

Having found that the ALJ erred in evaluating both NP Marth's and NP Horton's opinions, I must identify the appropriate remedy. Not every error requires vacating an ALJ's decision, and if an "error was harmless, meaning it was inconsequential to the ultimate nondisability determination," a court may affirm. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quotation marks omitted); *see also Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) ("The Court may not reverse an ALJ's decision on account of a harmless error.").

Here, Claimant argues that the ALJ's supportability errors were not harmless because both providers assessed limitations incompatible with sustained full-time work. NP Marth opined that Claimant's symptoms would constantly interfere with attention and concentration and that he would miss more than four workdays per month, (AR 2247, 2249), and NP Horton also found that Claimant would miss more than four workdays per month, along with having multiple "extreme" limitations, (AR 2242, 2244). The VE testified that these limitations would preclude competitive employment. (AR 55–56 (testifying that an individual absent from work two or more days a month on a sustained basis primarily due to seizure activities and recovering from seizures would not be able to engage in competitive work).) Thus, had the ALJ accepted the medical providers' opinions as persuasive with respect to these limitations based, in part, on a finding that the opinions were supported, Claimant would have been found disabled. Claimant has established that the ALJ's errors were harmful.

The Commissioner argues that any errors in the evaluation of the medical provider opinions in this case were harmless because an ALJ may find an opinion unpersuasive if it is unsupported *or* inconsistent with the record. (Doc. 12 at 2 (citing 20 C.F.R. § 404.1520c(b)(2) and *Woods*, 32 F.4th at 793 n.4).) I have previously rejected this argument and again find it unpersuasive for the following reason:

> *Woods* . . . does not help the Commissioner because the Ninth Circuit did not find that the ALJ erred with respect to its consistency analysis, did not evaluate the ALJ's supportability analysis (possibly because it may not have been challenged on appeal), and thus had no occasion to conduct a harmless error analysis. . . . Put another way, *Woods* has no bearing on the harmless error analysis in this circumstance, and the Commissioner's argument is rejected.

*Harrison S. v. Comm'r of Soc. Sec. Admin.*, 2026 WL 874175, at *7 (D. Ariz. Mar. 31, 2026). A proper supportability analysis may inform the ALJ's findings as to consistency and, overall, as to the persuasiveness of the opinions. Thus, the ALJ's failure to adequately analyze the supportability of NP Marth's and NP Horton's opinions is harmful error.

Having established that the errors in this case were harmful, I next turn to Claimant's argument that I should apply the "credit-as-true rule," (Doc. 10 at 22–23; Doc. 13 at 9–10), which would result in the immediate award of benefits, as opposed to remand for further proceedings. *Garrison*, 759 F.3d at 1019. The credit-as-true rule only applies if, among other things, "further proceedings would not be useful." *Washington v. Kijakazi*, 72 F.4th 1029, 1041 (9th Cir. 2023). Remand for benefits, rather than further proceedings, is appropriate "only in rare circumstances." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quotation marks omitted). "The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court." *Revels*, 874 F.3d at 668 (citation modified).

I decline to apply the credit-as-true rule because the ALJ erred by failing to evaluate the supportability of NP Marth's and NP Horton's opinions, and the ALJ might, after properly evaluating those opinions, decide again on remand that they are not persuasive and that Claimant is not disabled. Accordingly, I cannot find that further proceedings

would "serve no useful purpose," *Brown-Hunter*, 806 F.3d at 495 (citation omitted), and will instead remand for further proceedings.

**IV. CONCLUSION**

The ALJ failed to analyze NP Marth's and NP Horton's medical opinions for the supportability factor. In doing so, he committed harmful error that warrants a remand for further proceedings, rather than an award of benefits.

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **vacated and remanded** for further administrative proceedings.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment consistent with this Order and close this case.

Dated this 29th day of September, 2026.

Honorable Sharad H. Desai
United States District Judge